UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN S. PEREIRA,

                              Plaintiff,

          - against –

UNITED STATES DEPARTMENT OF JUSTICE;
UNITED STATES TRUSTEES PROGRAM;
LORETTA LYNCH, Attorney General for the
United States; CLIFFORD J. WHITE III, Director of
the United States Trustee Program; WILLIAM K.
HARRINGTON, United States Trustee for Region 2,

                              Defendants.

Case No. 16 Civ. 2599

**COMPLAINT**

     Plaintiff JOHN S. PEREIRA, by and through his attorneys BINDER & SCHWARTZ

LLP, brings this complaint and alleges as follows:

## NATURE OF THE CASE

     1.     This action arises out of unlawful conduct by the defendants in connection with

the decision by Clifford J. White, Director for the Executive Office of the United States Trustee

Program ("the Director"), to affirm the decision of William K. Harrington, United States Trustee

for Region 2 (the "United States Trustee") to suspend plaintiff John S. Pereira's appointment as a

Chapter 7 panel trustee for the Southern District of New York (the "Southern District Panel")

and the Eastern District of New York (the "Eastern District Panel") for a period of one year (the

"Decision").

     2.     In violation of the Administrative Procedure Act, 5 U.S.C. § 701, *et seq*., and the

Rehabilitation Act, 29 U.S.C. § 794, the Director failed to comply with applicable regulations

under 28 C.F.R. § 58.6, arbitrarily and capriciously, and contrary to law, by, among other things,

delaying his final decision for many months after the deadline specified in the applicable regulations and suspending Mr. Pereira on the basis of an incomplete record.

3.      The Decision is unsupported even by the record the Director had before him. Among other things, the Director refused on an arbitrary basis to credit evidence favorable to Mr. Pereira, suspended Mr. Pereira from the Southern District Panel on the basis of three isolated instances occurring only in the Eastern District, and issued a sanction that in effect permanently terminates him from both Panels.

4.      The suspension decision also discriminated against Mr. Pereira on the basis of his hearing disability in violation of the Rehabilitation Act, 29 U.S.C. § 794, and in violation of Equal Opportunity regulations with which the United States Trustee Program and the Director are required to comply, 28 C.F.R. § 58.5.

5.      Mr. Pereira seeks a declaratory judgment that the Director's decision violated the Administrative Procedure Act and was discriminatory; vacatur of the Director's one year suspension of Mr. Pereira from the Southern District and Eastern District Panels; and a preliminary and permanent injunction to prevent the defendants from relying on the same conduct as the basis for future action against Mr. Pereira.

6.      Mr. Pereira also seeks damages and legal costs and fees from the defendants under the Rehabilitation Act, 29 U.S.C. § 794a, for the harm caused to Mr. Pereira's business and reputation from the illegal suspension decision.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331, as all of the claims asserted arise under federal law.

8.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2), as Mr. Pereira, the United States Trustee, and one of the two Panels at issue are located in this judicial district and a substantial part of the events that give rise to this action occurred in this judicial district.

9.      The United States has waived sovereign immunity for this action under 5 U.S.C. § 702 and 29 U.S.C. § 794.

## PARTIES

10.     Mr. Pereira is a New York bankruptcy lawyer with offices at 641 Lexington Avenue, New York, New York, appointed to the Southern District Panel and the Eastern District Panel to administer debtors' estates under the supervision of the United States Trustee.

11.     Defendants are the Department of Justice, Loretta Lynch, the Attorney General for the United States, the agency head with supervisory authority over the United States Trustee Program; the United States Trustee Program, a component of the Department of Justice; Clifford J. White III, the Director for the Executive Office of the of the United States Trustee Program; and William K. Harrington, the United States Trustee for Region 2, which includes the Southern District Panel and the Eastern District Panel.

## FACTUAL ALLEGATIONS

### A.      Chapter 7 Panel Trustees

12.     The United States Trustee Program appoints private lawyers to a panel of trustees in every federal district in the United States who are then assigned to administer cases filed under Chapter 7 of the Bankruptcy Code ("Panel Trustees").

13.     Panel Trustees are responsible for administering the bankruptcy estate in Chapter 7 cases, including ensuring that the debtor complies with rules and regulations and paying

unsecured creditors.

14.     One of the tasks of a Panel Trustee is to conduct a creditor's meeting under section 341(a) of the bankruptcy code (the "Section 341(a) Meeting").  In the Southern District and the Eastern District Panels, the Section 341(a) Meeting is held in a small, crowded room with the Panel Trustee, debtors, and the debtor's attorneys.  The Panel Trustee questions each debtor about the debtor's bankruptcy forms, assets, and liabilities.  A primary purpose of this meeting is to determine whether the bankruptcy is lawful and proper and to verify that the debtor is not concealing or understating assets.

15.     Panel Trustee appointments are made for one year and can be indefinitely renewed.

16.     The Panel Trustees receive a portion of the Chapter 7 bankruptcy filing fee and a percentage from any sales of the debtor's property.  The Panel Trustee receives no compensation for so called "no-asset" cases, in which the filing fee is waived.

17.     Panel Trustee appointments are required to comply with federal equal opportunity policies, which forbid discrimination on the basis disability.  28 C.F.R. § 58.5.

**B.     John Pereira**

18.     Mr. Pereira was the first Chapter Panel Trustee ever appointed in the Southern District Panel.  He was first appointed in October 1979, and has been re-appointed each year until the present.  He assisted the Office of the United States Trustee in the Southern District in developing appropriate questions and the agenda for Section 341(a) Meetings with creditors and conducted the first Section 341(a) Meeting held under the Bankruptcy Code in the Southern District Panel.

19.     Mr. Pereira was the first Panel Trustee appointed in the newly formed Eastern

4

District Panel in 1981, and he has been re-appointed each year until the present.[1]

20.      Mr. Pereira has conducted more than 60,000 Section 341(a) Meetings over the course of his more than 35 year tenure.  As a Panel Trustee, Mr. Pereira has handled difficult and complex cases in all areas of business and industry and also has experience as an examiner and a Chapter 11 panel trustee.

21.      Mr. Pereira is able to satisfactorily perform in the position and meet the United States Trustee Program's expectations.

22.      In his United States Trustee System Trustee Performance Review for the Eastern District Panel from January 1, 2009 to December 31, 2010, Mr. Pereira was provided the highest possible scores in all areas. As part of the review, an analyst hired by the United States Trustee Program observed Mr. Pereira conducting multiple Section 341(a) Meetings. Mr. Pereira was praised for his specific questioning of the debtors, which on several occasions revealed fraud in the process.

23.      In the same Performance Review discussed in paragraph 22 above, it was noted that, in response to a different complaint from a debtor during that earlier period, the root of the problem was the debtor's lack of preparation and not a failure of Mr. Pereira.  As a result of that earlier complaint, Mr. Pereira was more closely monitored, and  the United States Trustee "observed numerous meetings of creditors conducted by [Mr. Pereira] during that time, both in person and by recording, and found that [Mr. Pereira's] tone is professional and that he addresses debtors, counsel and other parties present courteously."

24.      In his United States Trustee System Trustee Performance Review for the Southern

---

[1] As Mr. Pereira's initial appointments to both the Southern District and Eastern District Panels were part of a pilot program, his official start dates for each program are several years later.

District Panel from July 1, 2009 to June 30, 2011, Mr. Pereira was provided the highest possible scores in almost all areas.  Among other things, the review stated, "Mr. Pereira has and continues to exercise good judgment in connection with his administration of Chapter 7 cases."

25.     In his United States Trustee System Trustee Performance Review for the Eastern District Panel from January 1, 2011 to December 31, 2012, Mr. Pereira was found effective in all review criteria, the highest possible scores available.

26.     In his United States Trustee System Trustee Performance Review for the Southern District Panel from July 1, 2011 to December 31, 2013, Mr. Pereira was provided the highest possible scores in almost all areas.  Among other things, the review stated "The Trustee conducts his [section 341(a)] meetings in a professional manner and allows creditors the opportunity to question the debtors."

27.     Mr. Pereira served in the Vietnam War and suffered hearing loss during his military service.

28.     Mr. Pereira has extensive documentation and records of this permanent impairment.

29.     Mr. Pereira wears two hearing aids to correct for his hearing loss.  These hearing aids are visible to the public.

30.     Mr. Pereira occasionally has difficulty hearing and questioning witnesses at an appropriate volume during the Section 341(a) Meetings, which occur in a crowded room with loud ambient noise.  He can correct for the disability with his hearing aids and/or when the speaker is properly amplified.

31.     On account of his hearing disability, Mr. Pereira will often speak in a loud voice but is unaware he is doing so.

6

C.      **The Suspension Decision**

32.      Suspension and termination decisions by the United States Trustee Program are governed by 28 C.F.R. § 58.6.

33.      The United States Trustee on September 10, 2014, notified Mr. Pereira that he was suspending Pereira's appointment as Panel Trustee for the period of one year (the "Notice"). 28 C.F.R. § 58.6(a).

34.      The United States Trustee based his decision on Mr. Pereira's conduct during three Section 341(a) Meetings: *In re Cota-Birenbaum*, No. 13-47467-nhl (Bankr. E.D.N.Y 2015), *In re Castro*, No. 14-43095-ess (Bankr. E.D.N.Y. 2014), and *In re Alvarez*, No. 14-43096-nhl (Bankr. E.D.N.Y. 2014).

35.      The United States Trustee Program had received a complaint from Nidia Cota-Birenbaum, the debtor in *In re Cota-Birenbaum*.

36.      The United States Trustee had received a complaint from Renée F. Frank, a "per diem" appearance attorney, who appeared for the debtor's attorney Mr. Brodman during the *In re Castro* and *In re Alvarez* meetings and had never met the debtors before that morning.

37.      The United States Trustee had also received a complaint from William Ward Saxton who was in the audience during the *In re Castro* and *In re Alvarez* meetings.

38.      The United States Trustee subsequently reviewed the audio recordings of all three meetings.

39.      The United States Trustee conducted no investigation and did not hear or request evidence from other attorneys who were present during the three isolated Section 341(a) Meetings.

40.      On September 29, 2014, Mr. Pereira timely requested review by the Director of

the United States Trustee's suspension decision ("Request for Review"). 28 C.F.R. § 58.6(b).

41.     In his Request for Review, Mr. Pereira provided a reasonable explanation of his conduct and questioning in each of the three Section 341(a) Meetings, explaining the responses and specific factual situation of the cases, and also explaining that an audio recording alone would not capture the nuances and context of the meetings.

42.     Statements from three independent eye witnesses – John Castro, Jonathan TenBrink, and Roger Schumann – were presented to the Director.

43.     As part of his request for review, Mr. Pereira submitted an affidavit from John C. Castro (no relation to the debtor Castro).

44.     Mr. Castro, who was present all day on July 16, 2014, and commented on the *In re Castro* Section 341(a) Meeting, asserted that Mr. Pereira's conduct during the meeting was proper and that an audio recording could not fully capture the context of Mr. Pereira's comments and show his physical positioning and gestures.

45.     Mr. TenBrink and  Mr. Schumann, lawyers who represent debtors against Panel Trustees, separately submitted letters on behalf of Mr. Pereira on their own behest.

46.     Mr. TenBrink, who was present for the Section 341(a) Meetings held on July 16, 2014, did not notice any inappropriate behavior from Mr. Pereira that day.

47.     Mr. TenBrink had not seen the complaints but had heard about a complaint in relation to one case, which appears to be *In re Castro*, and stated that Mr. Pereira's conduct during the meeting was appropriate based on the responses given by the debtor.

48.     Mr. Schumann was also present during the Section 341(a) Meetings held on July 16, 2014, and found the actions of Mr. Pereira proper.  In particular, Mr. Schumann described Mr. Saxton's behavior in *In re Castro* as being inappropriate and rude in contrast to Mr. Pereira's

8

actions.

49.    As part of his request for review, Mr. Pereira stated that he had three character

witnesses – Arthur Gonzalez, former Bankruptcy Judge for the Southern District and former

United States Trustee for Region 2; Melanie Cyganowski, former Bankruptcy Judge for the

Eastern District; and Irving Picard, former United States Trustee for Region 2 – to serve as

references.

50.    Mr. Pereira also asserted that Mr. Castro could testify about his positive and

conciliatory interaction with the debtor from *In re Cota-Birenbaum* after the proceedings and not

captured in the audio recordings.

51.    Mr. Pereira submitted evidence that his legal business was dependent on his role

as Panel Trustee and that a one-year suspension would effectively end it.

52.    Mr. Pereira also submitted evidence that he suffered from hearing loss as a result

of his military service and was wearing two hearing aids during the meetings in question, which

resulted in him speaking in a loud voice.

53.    Mr. Pereira submitted evidence that his difficulty hearing caused him at times to

speak at a loud volume and that people may think he is yelling when he means to speak

normally, and that this was the case during the Section 341(a) Meetings at issue.

54.    Attached to his request for review, Mr. Pereira submitted his resume charting his

lengthy career and describing various complex and difficult cases that he handled.

55.    United States Trustee timely responded to Mr. Pereira's request for review on

October 14, 2014 ("Response").  28 C.F.R. § 58.6(g).

56.    Mr. Pereira replied to the United States Trustee's response on October 24, 2014

("Reply").

**D.      The Unauthorized Delay In The Director's Final Decision**

57.      Clifford J. White III, the Director of the Executive Office for the United States Trustee Program, did not issue a final decision upholding the United States Trustee's suspension decision until March 4, 2016.

58.      The final decision of the Director is considered a final agency action for purposes of review under the Administrative Procedures Act, 5 U.S.C. § 706.

59.      Pursuant to 28 C.F.R. § 58.6(i), the Director must issue a final decision no later than 30 calendar days from the receipt of the United States Trustee's response to a Panel Trustee's suspension challenge, absent consent from both the United States Trustee and the Panel Trustee.

60.      Here, the United States Trustee's Response was submitted on October 14, 2014.

61.      From November 4, 2014 to January 27, 2015, the United States Trustee and Mr. Pereira consented, at the request of the Director, to delaying the Director's written decision.

62.      From January 27, 2015 to August 28, 2015, the United States Trustee and Mr. Pereira, at the request of the Director, again consented several times to delaying the Director's written decision.  Mr. Pereira's consent to each of these extension requests was premised on the Director's statement that he needed time to consider setting up a face-to-face meeting with the Director.

63.      Under the regulations, the Director may order a face-to-face meeting – which is contemplated to be an evidentiary hearing – or seek additional information to resolve factual disputes.  28 C.F.R. § 58.6(h).

64.      On August 28 2015, Lisa A. Tracy, a Deputy General Counsel for the United States Trustee Program, stated that the agency would not issue its final decision until it had made

a decision as to whether to hold a face-to-face meeting.  On this basis, Mr. Pereira was again asked to consent to additional time for the Director to make his final decision.  Mr. Pereira consented to waive time until September 25, 2015, in the continued hope that he would be granted a face-to-face meeting.

65.     On October 20, 2015, Mr. Pereira advised the Director that he was not willing to consent to any additional time until the face-to-face meeting was confirmed.

66.     On October 29, 2015, 34 days from September 25, 2015, the Deputy General Counsel for the United States Trustee Program informed Mr. Pereira that the agency had still not made up its mind about holding a face-to-face meeting.

67.     The Director made no further extension requests, and Mr. Pereira did not consent to any further delays after September 25, 2015.

68.      The Director's decision was required to be issued no later than October 25, 2015. 28 C.F.R. § 58.6(i).

69.     The Director provided no justification for the lengthy delay between September 25, 2014 and March 4, 2016, and did not obtain the consent of Mr. Pereira for the delay from September 25, 2015 through March 4, 2016, the date the Director's decision was issued.

70.     The Director never held a face-to-face meeting, despite using the possibility of a face-to-face meeting to obtain numerous extensions from Mr. Pereira.

71.     The legislative history of the final decision states that a good reason for delay is to give the Director more time to hold a face-to-face meeting when there are issues of contested fact.

72.     On March 4, 2016 – the same day he issued the final Decision – the Director notified Mr. Pereira that it was his policy not to hold face-to-face meetings, stating "it has not

been the Director's practice to meet with trustees in connection with a pending request for review of a notice of suspension submitted pursuant to 28 C.F.R. § 58.6(f)," and therefore he did not hold one for Mr. Pereira.

73.     Instead, the Director based his decision exclusively on an administrative record consisting of the United States Trustee's Notice of Suspension; Mr. Pereira's Request for Review; the United States Trustee's Response; Mr. Pereira's Reply; the recordings of the three Section 341(a) Meetings; the transcripts of these meetings; and the letters from Mr. TenBrink and Mr. Schumann submitted separately from Mr. Pereira's responses.

**E.     Harm to Mr. Pereira from the Suspension Decision**

74.     For more than 35 years, Mr. Pereira's appointment as a Panel Trustee has been the lynchpin of his business.  Mr. Pereira currently derives substantially all of his legal business from his work as a Panel Trustee.

75.     Mr. Pereira has practiced law under a cloud of possible suspension since the United States Trustee filed the Notice of Suspension on September 10, 2014.  Because the bankruptcy bar is small and the suspension decision common knowledge, Mr. Pereira has suffered harm to his reputation and legal business since September 10, 2014.

76.     Since the final agency action on March 4, 2016, and its subsequent publicity in the media, Mr. Pereira's reputation and business have suffered further reputational harm.

77.     Should the year-long suspension now be allowed to go into effect, prior to this Court's review, virtually all of Mr. Pereira's business will evaporate and the lengthy suspension period will effectively terminate his legal business.

**COUNT ONE:**
**VIOLATION OF ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 706(2)(A) AND**
**(D), BASED ON THE UNAUTHORIZED DELAY IN THE DIRECTOR'S FINAL**
**DECISION**

78.     Mr. Pereira incorporates the allegations of paragraphs 1 through 77 above by reference as if fully stated herein.

79.     United States Trustee Program regulations governing suspension and termination of Panel Trustees expressly provide that the Director's final decision shall be issued no later than 30 calendar days from the receipt of the United State Trustee's response to the Panel Trustee's request for review.  28 C.F.R. § 58.6(i).

80.      The only exception to the 30 calendar day rule is when both the Panel Trustee and the United States Trustee agree to a longer period of time, *id*., which did not happen here.

81.     The Director provided no valid reason for his lengthy and unauthorized delay.

82.     The Director did not hold a face-to-face meeting to resolve issues of contested fact, one of the reasons for delay expressly contemplated by the legislative history.

83.     Although the Director conveyed to Mr. Pereira that he was considering a face-to-face meeting to convince Mr. Pereira to consent to several extensions, in the entire 15 months that the decision remained in his office for review he never held one.

84.     The period of delay based on extensions agreed to by Mr. Pereira while the Director represented he was considering a face-to-face meeting was arbitrary and capricious and contrary to law, as the Director later admitted that he never intended to hold a face-to-face meeting, meaning the extensions to which Mr. Pereira consented on that basis were induced by the Director on a false premise. The Director's blanket policy not to hold face-to-face meetings violates his suspension and termination regulations, which contemplates the possibility in

13

appropriate situations.  28 C.F.R. § 58.6(h).

85.     The 6-month delay from the last extension to which Mr. Pereira consented and the Director's final decision expressly violated the United States Trustee Program's own regulatory procedures and made the final decision arbitrary and capricious and contrary to law.  5 U.S.C. § 706(2)(A) and (D).

86.     The notes to the final regulation expressly recognize the potential harm to Panel Trustees arising from delays in suspension and termination decisions and specifically require consent from the Panel Trustee to any extension of that time period.

87.     The 15 month delay actually harmed Mr. Pereira because he practiced under a cloud of imminent suspension for the entire period, negatively hurting his business and reputation, yet unable to challenge the agency's action in court absent a final agency decision.

**COUNT TWO:**
**VIOLATION OF ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 706(2)(A), FOR MAKING THE SUSPENSION DECISION ON AN INCOMPLETE RECORD**

88.     Mr. Pereira incorporates the allegations of paragraphs 1 through 87 above by reference as if fully stated herein.

89.     Through the submission of information, references, affidavits and letters, Mr. Pereira established an issue of material fact about the propriety of his alleged conduct during the three Section 341(a) Meetings that form the basis of the United States Trustee Program's decision and established that additional fact witnesses existed.

90.     Mr. Pereira's submission of information, references, affidavits and letters also established an issue of material fact regarding the need to balance his alleged conduct during the three Section 341(a) Meetings against his long, productive, and effective service as a Panel Trustee.

14

91.     The comments made in connection with the final rulemaking for the suspension and termination regulations urge the Director to hold a face-to-face meeting when there are issues of material fact, such as those present here, and agency regulations give the Director wide latitude in undertaking additional fact gathering when needed.

92.     The face-to-face meeting contemplated by the regulations can include the Panel Trustee "appearing with a representative, submitting documentary evidence, presenting witnesses, and confronting any witnesses the agency presents."  Procedures for Suspension and Removal of Panel Trustees and Standing Trustees; Final Rule, 62 Fed. Reg. 51739, 51745 (Oct. 2, 1997) (codified at 28 C.F.R. § 58.6).

93.     The Director not only did not hold a face-to-face meeting but also made no other efforts to collect additional facts to resolve the factual disputes, despite delaying his decision for 15 months.  Accordingly, the administrative record that the Director relied upon was incomplete as to material facts that the Director knew existed.

94.     The Director's final decision was thus rendered on a patently deficient administrative record and was thus arbitrary and capricious and contrary to law under 5 U.S.C. § 706(2)(A).

**COUNT THREE:**
**VIOLATION OF ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 706(2)(A), FOR MAKING A SUSPENSION DECISION THAT IS ARBITRARY AND CAPRICIOUS ON THE RECORD PRESENTED**

95.     Mr. Pereira incorporates the allegations of paragraphs 1 through 94 above by reference as if fully stated herein.

96.     The Director incorrectly evaluated the limited evidence before him in a manner that abused his discretion and was arbitrary and capricious.

15

97.     For example, the Director credited only the statements of interested complainants without consideration of context or explanations from non-involved people who were present.

98.      The Director credited the statements of the per diem attorney for debtor Castro, who complained of the manner in which Mr. Pereira's allegedly treated the debtor, but did not credit the affidavits of John Castro (no relation), Jonathan TenBrink, and Roger Schumann who were also present at the meeting.

99.     The excuse provided for not crediting the statements of John Castro and Jonathan TenBrink was that their affidavits were not contemporaneous.  However, their affidavits could not have been contemporaneous, as at the time of the Section 341(a) Meeting at issue they did not and could not know that there was any issue.

100.    The excuse for not crediting Roger Schumann's statements is even more specious in that the Director discounts Mr. Schumann's observations as not relevant because they were about an unnamed debtor's Section 341(a) Meeting.  The Section 341(a) Meeting Mr. Schumann describes, however, in which Ward Saxton interrupts Mr. Pereira's questioning of a debtor, describes the *In re Castro* meeting.

101.    Given the factual dispute created by the affidavits of John Castro, Jonathan TenBrink, and Roger Schumann regarding Mr. Pereira's conduct, it was arbitrary and capricious for the Director to refuse to hold a face-to-face meeting to hear directly from these witnesses and assess credibility and instead make credibility determinations based on whether a written statement was or was not contemporaneous.

102.    For another example, the Director notes several times that during the three isolated Section 341(a) Meetings, Pereira did not explain he was wearing a hearing aid, that he was hard of hearing, or that he was speaking loudly inadvertently.  This again misses the point.

If Mr. Pereira was inadvertently speaking loudly, he would not have known he was doing so, and thus would not have understood he needed to apologize.

103.     For another example, the Director relies heavily on the audio recording from the three Section 341 Meetings at issue but refused to credit affidavits from others who were there or to credit Mr. Pereira's explanations.  Audio tapes without context can be misleading, and the discrepancies among those witnessing the meeting again created a factual dispute, which at a minimum should have resulted in a face-to-face meeting.  It was an abuse of discretion and arbitrary and capricious to rely solely on the audio tapes and transcripts without the context offered by Mr. Pereira and non-parties.

104.     For another example, there were numerous points in each of the three Section 341(a) Meetings at issue in which it appeared that the debtors were being recalcitrant or uncooperative.  The Director refused to credit this factor, even though the United States Trustee Handbook specifically advises that "Uncooperative or recalcitrant debtors may be reminded of their duty to cooperate with the trustee in the administration of the case."  Handbook for Chapter 7 Trustees (2012), § 3.D.9.  It was arbitrary and capricious for the Director to discount some of the United Trustee Program rules while crediting others.

105.     For another example, Mr. Pereira's business depends on his appointment as a Panel Trustee, and he presented evidence that a year suspension would effectively end his business.

106.     The United States Trustee and the Director incorrectly treated the effective termination of Mr. Pereira's business as a suspension and thus the decision was arbitrarily made and reviewed within the framework of suspension, not termination.  Despite evidence in the record to the contrary, the Director explicitly refused to treat Mr. Pereira's

suspension as an effective termination.

107.    This last example is particularly egregious because the effective termination

applies to both the Southern District and the Eastern District Panels, even though there is

no evidence in the record whatsoever that Mr. Pereira did anything wrong in connection

with his Southern District Panel duties, effectively shutting Mr. Pereira out from any

further Panel Trustee work.

108.    Because the defendants failed to decide whether Mr. Pereira's actions

justified termination, the final agency action was rendered arbitrary and capricious and

contrary to law under 5 U.S.C. § 706(2)(A).

109.    At the very least, Mr. Pereira created a genuine issue of fact as to whether

his suspension was an effective termination, and it was arbitrary and capricious under 5

U.S.C. § 706(2)(A) for defendants to ignore this factual dispute.

**COUNT FOUR:**
**VIOLATION OF REHABILITATION ACT, 29 U.S.C. § 794**

110.    Mr. Pereira incorporates the allegations of paragraphs 1 through 109 above

by reference as if fully stated herein.

111.    The defendants are required to comply with the Rehabilitation Act.  29

U.S.C. § 794(a).

112.    The protection of the Rehabilitation Act extends to Mr. Pereira as a

government appointee.

113.    Because Mr. Pereira is not an employee, there is no administrative remedy

for him to exhaust.

114.    Mr. Pereira is a qualified individual with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 794, because his hearing loss substantially limits several of his major life activities, including hearing and working.

115.    Mr. Pereira's disability limits his ability to hear and question witnesses at a low volume during proceedings, a significant part of his work as a Panel Trustee.

116.    The volume at which Mr. Pereira questions witnesses is not excessive or unreasonable.

117.    Mr. Pereira has extensive documentation and records of this long-standing and permanent impairment, and it is open and obvious to the public.

118.    Mr. Pereira is qualified to perform the essential functions of a Panel Trustee, as is evidenced in part by his longstanding appointment to the Southern District and Eastern District Panels, and his continued work in this role during the long pendency of the review process.

119.    In his request for review, Mr. Pereira informed the United States Trustee Program of his disability and that his hearing loss caused the behavior at issue in the suspension decision.

120.    The defendants discriminated against Mr. Pereira in violation of 29 U.S.C. § 794 when they suspended Mr. Pereira on account of a physical impairment that did not prevent him from performing his duties, an adverse action.

121.    To the extent defendants contend that Mr. Pereira did not perform his duties due to his physical impairment, the defendants discriminated against Mr. Pereira in violation of 29 U.S.C. § 794 when they failed to make reasonable accommodations for Mr. Pereira's physical impairment and instead suspended Mr. Pereira because of it, an adverse action.

**COUNT FIVE:**
**VIOLATION OF ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 706(2)(A) AND (D), BASED ON DISABILITY DISCRIMINATION**

122.     Mr. Pereira incorporates the allegations of paragraphs 1 through 121 above by reference as if fully stated herein.

123.     The United States Trustee Program's policy states that "U.S. Trustees shall not discriminate . . . in appointments to the private panel of trustees" and that "[e]ach U.S. Trustee shall be guided by . . . the regulations of the Office of Personnel Management relating to equal employment opportunity," which includes disability discrimination.  28 C.F.R. § 58.5.

124.     A disability claim based on the regulations of the Office of Personnel Management tracks the disability claim in the Rehabilitation Act.

125.     The United States Trustee Program violated these policies when it discriminated against Mr. Pereira on the basis of his hearing loss for the reasons in paragraphs 111 to 121.

126.     This discrimination violated the United States Trustee Program's own procedures and rendered its decision arbitrary and capricious and contrary to law in violation of 5 U.S.C. § 706(2)(A) and (D).

**Prayer for Relief**

WHEREFORE, plaintiff Mr. Pereira respectfully requests that this Court:

1)     Declare that the Director's decision dated March 4, 2016, to suspend Mr. Pereira for one year violated its own policies and was arbitrary and capricious and in violation of law, in violation of the Administrative Procedure Act.

2)    Declare that the United States Trustees Program's decision to suspend Mr. Pereira

discriminated against him on the basis of his disability in violation of the

Administrative Procedure Act and the Rehabilitation Act.

3)    Vacate the United States Trustees Program's decision to suspend Mr. Pereira for

the violations under the Administrative Procedure Act and the Rehabilitation Act,

with prejudice.  In particular for the injury to Mr. Pereira caused by delay in

Count One and discrimination in Counts Four and Five, remand is not an effective

remedy because no additional process after the fact can correct the violations;

4)    Enjoin the defendants from using the same three Section 341(a) Meetings as the

basis for future action against Mr. Pereira.  Because the conduct during these

meetings occurred more than a year and a half ago and Mr. Pereira has continued

practiced as a Panel Trustee without incident, the conduct during these three

Meetings is now stale and should not be viewed as reliable or probative;

5)    Award appropriate damages to Mr. Pereira under the Rehabilitation Act;

6)    Award attorney's fees and costs to Mr. Pereira; and

7)      Order any further relief as the Court deems just and proper.

Dated: New York, New York
        April 7, 2016

                                BINDER & SCHWARTZ LLP


                        By:     /s/ Wendy H. Schwartz
                                Wendy H. Schwartz
                                Lisa C. Lightbody
                                366 Madison Avenue, 6th Floor
                                New York, NY 10017
                                (212) 510-7008
                                wschwartz@binderschwartz.com
                                llightbody@binderschwartz.com

                                *Attorneys for John S. Pereira*